UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CONSERVATION NORTHWEST, et al.,

    Plaintiffs,

    v.

DIRK KEMPTHORNE, in his official capacity as Secretary of the United States Department of the Interior, et al.,

    Defendants.

CASE NO. C04-1331-JCC

ORDER

## I. INTRODUCTION

This case involves the narrow question of whether this Court has the authority to review a claim for unreasonable delay in implementing recovery plans under the Endangered Species Act ("ESA"). The matter comes before the Court on cross motions by the parties. Plaintiffs first moved for summary judgment. (Dkt. Nos. 50-51.) In their Opposition, Defendants simultaneously opposed Plaintiffs' motion and moved to dismiss for lack of subject matter jurisdiction. (Dkt. No. 57.) After considering the parties' relevant submissions on the matter and determining that oral argument is unnecessary, the Court hereby rules as follows.

//

ORDER – 1

## II. BACKGROUND AND FACTS

Once a species is listed as endangered or threatened under the ESA, the Act provides a number of mechanisms in order to bring the species back from the brink of extinction. *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 104 (D.D.C. 1995). One of those mechanisms is the creation of a recovery plan, which "is supposed to be a basic road map to recovery, *i.e.*, the process that stops or reverses the decline of a species and neutralizes threats to its existence." *Id.* Specifically, Section 4(f) of the ESA states that "[t]he Secretary shall develop and implement plans (hereinafter in this subsection referred to as 'recovery plans') for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless he finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f).

The Grizzly bear (*Ursus arctos horribilis*) has been listed as "threatened" throughout the lower 48 states under the ESA since 1975. Amendment Listing the Grizzly Bear of the 48 Conterminous States as a Threatened Species, 40 Fed. Reg. 31734 (1975). In 1982, the U.S. Fish and Wildlife Service ("FWS") approved the Grizzly Bear Recovery Plan for the species, and issued a revised plan in 1993. (*See generally* Grizzly Bear Recover Plan (1993) (AR 1473-1647).) In 1997, FWS approved a recovery plan for the North Cascades Grizzly population at issue here, which will ultimately be appended as a "Chapter" to the larger Grizzly Bear Recovery Plan. (North Cascades Grizzly Bear Recovery Chapter (AR 1648-1708).) Under the heading "Priority recovery actions recommended for the first five years" the North Cascade Grizzly Bear Recovery Chapter states:

> > Develop a strategy for implementation of the North Cascades grizzly bear recovery chapter.
> > Develop an intensive ongoing educational program to provide information about grizzly bears and grizzly bear recovery to the public.
> > Initiate the NEPA process: 1) scoping; 2) information & education; and 3) documentation; to evaluate a range of alternatives to recover this population including the augmentation of the existing small population by placement of a small number of bears into the ecosystem and/or other recovery alternatives.
> > Conduct an intensive research and monitoring effort to determine grizzly bear population size and distribution, habitat use, and home ranges in the [North Cascades Grizzly Bear Recovery Zone].

ORDER – 2

1         >      Implement the Interagency Grizzly Bear Guidelines (IGBC 1986).

(*Id.* at 4-5 (AR 1652-53).)

It is undisputed that the North Cascades grizzly bear population is in dire straits, and it is now believed that there are only between five and twenty bears remaining. (*See* June 12, 2001 FWS News Release 1 (Dkt. No. 50 at 103) (noting "there are approximately 5 bears" in the North Cascades); FWS Species Assessment and Listing Priority Assignment Form: North Cascades Grizzly 4 (AR Supp. 486) (estimating less than twenty bears).) FWS's own documents state that "[i]t is clear that the population is far below the level necessary for viability and has a high probability of extirpation." (North Cascade Grizzly Bear Recovery Chapter 9 (AR 1658).)

Since the issuance of the North Cascades Grizzly Bear Recovery Plan, it is undisputed that some of the plan's terms have been put into place, including implementation of education and outreach programs, the Interagency Grizzly Bear Guidelines, and certain monitoring and habitat assessment activities. (*See* Pls.' Mot. 10-15; Defs.' Opp'n 6-7.) It is likewise undisputed that other portions of the recovery plan have not been implemented, notably the institution of a transparent decisionmaking process pursuant to the National Environmental Policy Act ("NEPA"). (*See, e.g.*, Pls.' Mot 10-11; Defs.' Opp'n 8.) Defendants state that "[t]o date, budget and funding constraints, the allocation of funds towards other recommended priority recovery actions of the Recovery Plan, as well as competition from co-equal or higher-priority recovery programs, have precluded initiation of the costly NEPA process for North Cascades grizzly recovery." (Defs.' Opp'n 8.) Defendants have not yet proposed a date by which the process will ultimately be initiated.

Plaintiffs argue that this failure to act is unacceptable because the NEPA process "is the heart of the Plan and would allow FWS to develop and consider a range of substantive recovery alternatives through a subsequent, public process." (Pls.' Mot. 10-11.) They therefore filed the present action seeking to compel Defendants to prevent further "unreasonable delay" and to implement fully the terms of the

ORDER – 3

recovery plan accordingly to a proposed schedule. (*Id.* at 24.)[1] Defendants simultaneously move to dismiss for lack of subject matter jurisdiction.

## III. ANALYSIS

Prior to reaching the substance of Plaintiffs' claims, the Court must be certain of its jurisdiction. Plaintiffs allege two alternative jurisdictional bases. First, Plaintiffs assert a claim directly under the citizen suit provision of the ESA. Second, Plaintiffs also allege a cause of action directly under the Administrative Procedures Act ("APA"). Where Plaintiffs assert causes of action under both the APA and the ESA, the Court "look[s] first at the ESA because it may permit [Plaintiffs] to recover their litigation costs, *see* 16 U.S.C. § 1540(g)(4), and because the APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court.'" *Bennett v. Spear*, 520 U.S. 154, 161-62 (1997) (citing 5 U.S.C. § 704).

### A.   Unreasonable Delay under the ESA

The citizen suit provision of the ESA states "any person may commence a civil suit on his own behalf . . . against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(2)(C). Plaintiffs allege that the Secretary has a non-discretionary duty to implement all terms of recovery plans in a timely manner, and that the Secretary has violated that duty by unreasonably delaying the initiation of the NEPA process contained within the Grizzly Bear Recovery Plan. Thus, the threshold jurisdictional issue before this Court is whether the Secretary has a nondiscretionary duty to timely

---

[1] Plaintiffs' First Amended Complaint alleges three separate claims: Count One asserts a violation of Section 4(f) of the ESA; Count Two alleges a violation of Section 4(b)(3)(B)(iii) of the ESA; and Count Three asserts a violation of (4)(3)(C)(iii) of the ESA. (First Amended Compl. 21-23 (Dkt. No. 29).) However, the parties only discuss the first of these claims in their cross motions. Because the parties have previously indicated that these cross motions would resolve all pending matters in this litigation and obviate the need for a trial (*see* Mot. to Continue Current Trial Date and to Set a Briefing Schedule 2 (Dkt. No 48)), the Court considers these other two claims abandoned and dismisses them without prejudice.

ORDER – 4

implement the terms of a recovery plan.

The D.C. Circuit has already addressed the issue of when claims for unreasonable delay for Agency action are reviewable under an analogous citizen suit provision of the Clean Air Act. *Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987) (cited with approval by *Farmers Union Cent. Exchange, Inc. v. Thomas*, 881 F.2d 757, 760 (9th Cir. 1989)). In that Case, the Sierra Club sought to compel the Environmental Protection Agency ("EPA") to conclude a specific rulemaking process, arguing that the EPA had unreasonably delayed in reaching a final conclusion even though there was no date-certain deadline for when this process had to be completed. After conducting an extensive analysis of the D.C. Circuit's prior decision in *NRDC v. Train*, 510 F.2d 692 (D.C. Cir. 1975), the court articulated a framework for determining whether an agency had a nondiscretionary duty of timeliness under the citizen suit provision of the Clean Air Act. It held that "[i]n order to impose a clear-cut nondiscretionary duty, we believe that a duty of timeliness must 'categorically mandate' that *all* specified action be taken by a date-certain deadline." *Sierra Club*, 828 F.2d at 791 (internal footnote and alterations omitted, emphasis in original). The court noted that such a date-certain deadline need "not explicitly [be] set forth in the statute, if it is readily ascertainable by reference to a fixed date or event." *Id.* at 791 n.58. This Court finds the *Sierra Club* decision persuasive and notes that its holding is in line with the fundamental principle of administrative law that "courts generally will defer to an agency's construction of the statute it is charged with implementing, and to the procedures it adopts for implementing that statute." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).

Applying the same standard here, Plaintiffs cannot point to any date-certain deadline by which the ESA compels the Secretary to implement all of the terms of a recovery plan. Nothing in the statute requires that implementation be completed by a certain date. Likewise, no deadline can be inferred from other date-certain deadlines established by Congress. This stands in stark contrast to other provisions of this very same act, which articulate precise deadlines by when the Secretary must act. *See, e.g.,* 16 U.S.C. § 1533(b)(3)(B). Accordingly, cases cited by Plaintiffs in which courts have analyzed other portions of

ORDER – 5

the ESA for which there are express statutory deadlines—such as the designation of "critical habitat" which must be published "concurrently" to the listing of a species as endangered or threatened (which itself is governed by the timetable listed in 16 U.S.C. § 1533(b)(3))—are inapposite here where there are no such clear dates specified by Congress. *See Center for Biological Diversity v. Evans*, No. C04-04496 WHA, 2005 WL 1514102 (N.D. Cal. 2005); *Biodiversity Legal Found. v. Norton*, 285 F. Supp.2d 1 (D.D.C. 2003). Thus, even if the Secretary has a duty to implement all terms of a recovery plan in a timely manner,[2] this duty is a discretionary one and is unreviewable by this Court via the ESA's citizen suit provision.

### B.  Unreasonable Delay Under the APA

As a general matter, the fact that there is no cause of action under the ESA does not necessarily preclude a cause of action under the APA. As the Supreme Court held:

> No one contends (and it would not be maintainable) that the causes of action against the Secretary set forth in the ESA's citizen-suit provision are exclusive, supplanting those provided by the APA. The APA, by its terms, provides a right to judicial review of all "final agency action for which there is no other adequate remedy in a court," § 704, and applies universally "except to the extent that–(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law," § 701(a). Nothing in the ESA's citizen-suit provision expressly precludes review under the APA, nor do we detect anything in the statutory scheme suggesting a purpose to do so. And any contention that the relevant provision of 16 U.S.C. § 1536(a)(2) is discretionary would fly in the face of its text, which uses the imperative "shall."

*Bennett v. Spear*, 520 U.S. 154, 175 (1997).

Nevertheless, as indicated in *Bennett*, suits under the APA are precluded to the extent agency

---

[2] Given the Court's analysis above regarding the unreviewable nature of "unreasonable delay" challenges to the implementation of recovery plans, the Court need not address the separate but related question of whether the ESA creates a duty to implement all aspects of a recovery plan once it has been developed. The Court notes that other courts have held that recovery plans do not so require. *See Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 547 (11th Cir. 1996); *Grand Canyon Trust v. Norton*, No. 04-CV-636PHXFJM, 2006 WL 167560 at *2-3 (D. Ariz. 2006); *Nat'l Wildlife Fed'n v. Nat'l Park Service*, 669 F. Supp. 384 (D. Wyo. 1987) (interpreting a prior version of 16 U.S.C §1533(f)); *but see Southwest Center For Biological Diversity v. Bartel*, 470 F. Supp.2d 1118, 1137 n.16 (S.D. Cal. 2006) ("FWS has discretion, using its expertise, to decide the content of the recovery plan; however, the ESA clearly requires FWS to follow through with the measures identified in recovery plans.")

ORDER – 6

action is committed to agency discretion by law. 5 U.S.C. § 701(a). For the same reasons stated above regarding the discretionary nature of the time line of implementation of recovery plans under the ESA, the Court holds that this same conduct is discretionary when analyzed under the APA. Thus, the Court does not have jurisdiction to review it.

### III.  CONCLUSION

The Court is mindful of the danger of holding that the timeliness of the implementation of recovery plans is beyond the scope of judicial review because even the most well-crafted recovery plan is meaningless if it is never implemented. After all, Congress clearly indicated that "[t]he Secretary *shall develop and implement* plans . . . for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless he finds that such a plan will not promote the conservation of the species."[3] 16 U.S.C. § 1533(f)(1) (emphasis added).

However, "[t]he danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance." *Heckler v. Chaney*, 470 U.S. 821, 834-35 (1985). "That decision is in the first instance for Congress," who must give courts sufficient "law to apply," which they have not done with respect to claims of unreasonable delay in the implementation of recovery plans. *Id.*

Nevertheless, Congress has the ability to conduct its own oversight even when agency decisions are beyond the scope of judicial review. Perhaps in recognition of this function, the ESA provides for Congressional monitoring of recovery plan efforts in which "[t]he Secretary shall report every two years to the Committee on Environment and Public Works of the Senate and the Committee on Merchant Marine and Fisheries of the House of Representatives on the status of efforts to develop and implement

---

[3] It is also noteworthy that Plaintiffs do not assert that Defendants have wholly eschewed their duties to implement provisions of the North Cascades Grizzly Bear Recovery Plan. As discussed earlier, Defendants have implemented some portions of the plan. Plaintiffs only allege that they have failed to timely implement it in its entirety, and in so doing have omitted certain key provisions.

ORDER – 7

recovery plans for all species listed." 16 U.S.C. § 1533(f)(3). Given the extreme importance of these recovery plans for a species on the brink of extinction, this Court expects that Congress will thoroughly examine the progress (or lack thereof) on the North Cascades Grizzly Bear Recovery Plan and take any necessary remedial action.

For now, however, it is not for this Court to second guess the Secretary's decision regarding the time line for implementation of a recovery plan where Congress has not mandated action by a specific date. Accordingly, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is hereby GRANTED and Plaintiffs' Motion for Summary Judgment is hereby DENIED.

SO ORDERED this 25th of June, 2007.

John C. Coughenour
United States District Judge

ORDER – 8